1  Vanessa R. Waldref
2  United States Attorney
   Eastern District of Washington
3  Patrick J. Cashman
4  Courtney Pratten
   Assistant United States Attorneys
5  Post Office Box 1494
   Spokane, WA 99210-1494
6  Telephone: (509) 353-2767
7

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 19 2023

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

8        UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF WASHINGTON
9

10 | UNITED STATES OF AMERICA,              | Case No.: 1:23-CR-2055-SAB-1
11 |                        Plaintiff,       | Plea Agreement
12 |
13 |                  v.
14 | FORREST ETHAN WANOUS,
15 |                        Defendant.
16

17      Plaintiff United States of America, by and through Vanessa R. Waldref,

18 United States Attorney the Eastern District of Washington, and Patrick J. Cashman

19 and Courtney Pratten, Assistant United States Attorneys for the Eastern District of

20 Washington, and Defendant Forrest Ethan Wanous ("Defendant"), both

21 individually and by and through Defendant's counsel, Deputy Federal Defender

22 Alex B. Hernandez, III, agree to the following Plea Agreement.

23      1.    Guilty Plea and Maximum Statutory Penalties

24      Defendant agrees to enter a plea of guilty to the sole count of the

25 Information filed on December 19, 2023, which charges Defendant with Violence

26 against Railroad Carriers, in violation of 18 U.S.C. § 1992(a)(1), a Class C felony.

27      Defendant understands that the following potential penalties apply:

28           a.    a term of imprisonment of up to 20 years;

PLEA AGREEMENT - 1

b.  a term of supervised release of up to 3 years or probation of up to 5 years;

c.  a fine of up to $250,000;

d.  restitution; and

e.  a $100 special penalty assessment.

2.  <u>Supervised Release/Probation</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.  5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.  3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.  2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

Additionally, Defendant understands that if the Court imposes a sentence of probation, the term of probation may be up to 5 years. Defendant understands that if Defendant violates any condition of probation, the Court may revoke probation and require Defendant to serve in prison a term up to the statutory maximum sentence set forth in this Plea Agreement. Defendant understands that if Defendant violates probation and the Court imposes a custodial sentence, the Court may also

PLEA AGREEMENT - 2

1  impose a term of supervised release following incarceration that may be up to the
2  statutory maximum term of supervised release authorized by statute for the offense
3  or offenses of conviction, without credit for time previously served on probation or
4  supervision.  Accordingly, Defendant understands that if Defendant violates one or
5  more conditions of probation, Defendant could serve a total term of incarceration
6  greater than the maximum sentence authorized by statute for Defendant's offense
7  or offenses of conviction.

8         3.    <u>The Court is Not a Party to this Plea Agreement</u>

9         The Court is not a party to this Plea Agreement and may accept or reject it.
10  Defendant acknowledges that no promises of any type have been made to
11  Defendant with respect to the sentence the Court will impose in this matter.

12         Defendant understands the following:

13         a.    sentencing is a matter solely within the discretion of the Court;

14         b.    the Court is under no obligation to accept any recommendations
15                made by the United States or Defendant;

16         c.    the Court will obtain an independent report and sentencing
17                recommendation from the United States Probation Office;

18         d.    the Court may exercise its discretion to impose any sentence it
19                deems appropriate, up to the statutory maximum penalties;

20         e.    the Court is required to consider the applicable range set forth
21                in the United States Sentencing Guidelines, but may depart
22                upward or downward under certain circumstances; and

23         f.    the Court may reject recommendations made by the United
24                States or Defendant, and that will not be a basis for Defendant
25                to withdraw from this Plea Agreement or Defendant's guilty
26                plea.

27  //
28  //

PLEA AGREEMENT - 3

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's

PLEA AGREEMENT - 4

1 conviction and sentence, and that an attorney will be appointed at no cost if
2 Defendant cannot afford to hire an attorney.

3     Defendant understands and agrees that any defense motions currently
4 pending before the Court are mooted by this Plea Agreement, and Defendant
5 expressly waives Defendant's right to bring any additional pretrial motions.

6     6.    Elements of the Offense

7     The United States and Defendant agree that in order to convict Defendant of
8 Violence against Railroad Carriers, in violation of 18 U.S.C. § 1992(a)(1) the
9 United States would have to prove the following beyond a reasonable doubt.

10         a.    *First*, on or about February 5, 2023, within the Eastern District
11              of Washington, Defendant knowingly and without lawful
12              authority or permission did disable railroad on-track equipment;

13         b.    *Second*, any of the conduct required for the offense was
14              affecting a railroad carrier engaged in interstate or foreign
15              commerce; and

16     7.    Factual Basis and Statement of Facts

17     The United States and Defendant stipulate and agree to the following: the
18 facts set forth below are accurate; the United States could prove these facts beyond
19 a reasonable doubt at trial; and these facts constitute an adequate factual basis for
20 Defendant's guilty plea.

21     The United States and Defendant agree that this statement of facts does not
22 preclude either party from presenting and arguing, for sentencing purposes,
23 additional facts that are relevant to the Sentencing Guidelines computation or
24 sentencing, unless otherwise prohibited in this Plea Agreement.

25     On February 5, 2023, Burlington Northern Sante Fe ("BNSF") railroad train
26 H-PASFRS1-01 ("victim train") stopped at the Wishram, Washington train station
27 after completing a leg of its journey between Pasco, Washington and Wishram,
28 Washington. The final destination of the victim train was California. The train at

1  the time was in the Eastern District of Washington.  During the leg of the journey

2  between Pasco and Wishram, the train crew conducted seven brake checks,

3  resulting in no issues being found and the braking system functioning properly.

4  The train included approximately eight rail cars carrying Hazardous material.

5  　　　While stopped at Wishram, the crew, consisting of a train conductor and

6  engineer, conducted a brake-functions check and confirmed the braking system

7  was operating properly.  At approximately 4:15p.m., on February 5, 2023, the crew

8  started to proceed on its next leg, where it would travel along the Columbia River.

9  However, due to another train needing to clear the rail bridge, the victim train

10  stopped for approximately 45 minutes.

11  　　　At approximately 4:30p.m., a blue Ford Taurus wagon, bearing Oregon

12  License Plate 281NNL was observed on security camera footage driving through

13  the Wishram train station parking lot.  The vehicle can be seen parking near the

14  maintenance facility.  Vehicles parking at the station are not uncommon while

15  trains are there because "Rail Fans" will often come to watch or photograph/video

16  the trains.  After parking the vehicle, the driver of the blue Ford Taurus, later

17  identified as the Defendant Forrest Ethan Wanous, exited the driver's door and

18  goes to the tailgate of the car multiple times.  Subsequently, the driver of the

19  Taurus was observed on security camera footage approaching numerous railcars

20  and going between the railcars.  The individual depicted appeared to be a white

21  male, with dark hair, wearing a tan long-sleeve shirt and tan colored

22  pants/coveralls.  The security video reflects the individual walked between the rail

23  cars for approximately 4 minutes.  By 4:36p.m., the individual is observed entering

24  the blue Taurus and waiting in the parking lot for approximately thirty minutes

25  before leaving the parking lot.

26  　　　After the Taurus left the station, the victim train was cleared to proceed.

27  However, the crew received an alert from the Distributed Power ("DP") indicating

28  a fault in the braking system.  The DP is the push locomotive at the back of the

PLEA AGREEMENT - 6

train. When there is a DP, the DP and front locomotive communicate via radio frequencies. These systems will indicate whether the brake lines are functioning properly and are pressurized. In this case, the crew received a notification the system was not functioning properly. Upon receiving the alert, the Train Engineer conducted a check of the rail cars and noticed one of the rail car's brake angle cocks was turned to the incorrect position. The brake angle cocks needed to be positioned correctly for the system to pressurize. The Engineer corrected the brake angle cock and radioed the Train Conductor, who indicated that did not resolve the issue. As it was approaching dark, the Engineer and Conductor switched, and the Conductor conducted a further check of the train. The Conductor located two more brake angle cocks that were in the incorrect position and one handbrake (known as a "Stinger") partially enabled. Upon correcting the brake angle cocks and hand brakes, the system was functioning properly, and the train was able to proceed to its destination. The effected cars were rail cars 47, 48, and 49. There were two other cars that appeared in the video to be contacted but did not have their systems disabled. In speaking with the Engineer and Conductor, the brake angle cocks are designed in such a way that you have to deliberately lift and turn the mechanism to change the position of the valve. Thus, a bumpy ride would not cause the brake angle cock to adjust.

Subsequently, the FBI conducted DNA swabbing of the effected rail cars. However, no DNA profile was obtained.

<u>Identification of the Defendant</u>

BNSF police determined the vehicle was registered to Derek Wanous. The FBI began conducting their investigation and collected records from surrounding law enforcement agents. The FBI learned that on January 18, 2023, Derek Wanous called to report that his father, the Defendant, had purchased a blue Ford Taurus but registered it in Derek's name. Derek further reported that his father was intoxicated and driving the vehicle around Goldendale without insurance.

PLEA AGREEMENT - 7

1   The FBI further obtained additional security camera footage from the

2   Wishram train station and observed the Taurus appeared parked at the Pastime

3   Tavern prior to driving to the station.  In the security camera footage, there appears

4   to be an individual wearing tan pants exiting and entering the Taurus and then

5   driving to the train station just prior to the events leading up to the train being

6   disabled.

7   SA Bodes contacted the owner of the Pastime Tavern and obtained video

8   footage from February 5, 2023, prior to the incident.  This video footage depicts a

9   man wearing tan pants and a tan camouflage shirt entering and sitting at the bar.

10  SA Bodes showed the owner of the Tavern a photograph of Derek Wanous, who

11  she indicated she did not recognize.  SA Bodes then showed her a photograph of

12  the Defendant, who she indicated she recognized and knew to be Forrest.  She

13  further identified the individual in the tan outfit in the video as the Defendant.

14                          <u>Interview of the Defendant</u>

15  SA Bodes determined that the Defendant was sentenced to 15 months in

16  Department of Corrections custody at Shelton, Washington for felony DUI.  SA

17  Bodes went to Shelton and met with the Defendant.  After advising the Defendant

18  of his rights, which he waived, the Defendant stated that he never had any contact

19  with trains.  When confronted with photograph stills from the security camera

20  footage, the Defendant admitted that was his car, that the photographs depict him,

21  and that he did walk up to the train on February 5, 2023.  However, the Defendant

22  denied having tampered with the train.

23  The Defendant now admits that he did tamper with and disable the on-track

24  railroad equipment based on the evidence.  At the time of the incident, the

25  Defendant was intoxicated and has no recollection of tampering with the train.

26  The Defendant further stipulates that the on-track railroad equipment was engaged

27  in interstate or foreign commerce and at the time of the offense was carrying at

28  least one employee of BNSF.

PLEA AGREEMENT - 8

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Violence against Railroad Carriers, in violation of 18 U.S.C. § 1992(a)(1) is 9. U.S.S.G. § 2A5.2(a)(4).

b.    Specific Offense Characteristics

The United States and the Defendant do not believe any specific offense characteristics apply.

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

PLEA AGREEMENT - 9

iv.    provides complete and accurate information during the sentencing process; and

v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

e.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.    Incarceration and Probation

The United States to recommend a sentence of no incarceration-credit for time served.

The United States and Defendant jointly agree to recommend 5 years of probation. Defendant agrees that the Court's decision regarding the conditions of Defendant's Probation is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Probation ordered by the Court, that will not be a

PLEA AGREEMENT - 10

basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Probation.

The United States and Defendant agree to recommend that in addition to the standard conditions of Probation imposed in all cases in this District, the Court should also impose the following conditions:

a.  The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.  Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c.  Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

The Defendant reserves the right to request early termination of his term of probation. The United States reserves the right to object to any request made by the Defendant to terminate his term of probation early.

11.  Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

//

PLEA AGREEMENT - 11

12.    <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

13.    <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

14.    <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

15.    <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release or probation, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack

PLEA AGREEMENT - 12

1  upon the conviction or sentence, including, but not limited to, writ of habeas

2  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

3      16.    <u>Withdrawal or Vacatur of Defendant's Plea</u>

4          Should Defendant successfully move to withdraw from this Plea Agreement

5  or should Defendant's conviction be set aside, vacated, reversed, or dismissed

6  under any circumstance, then:

7          a.    this Plea Agreement shall become null and void;

8          b.    the United States may prosecute Defendant on all available

9                charges;

10         c.    The United States may reinstate any counts that have been

11               dismissed, have been superseded by the filing of another

12               charging instrument, or were not charged because of this Plea

13               Agreement; and

14         d.    the United States may file any new charges that would

15               otherwise be barred by this Plea Agreement.

16         The decision to pursue any or all of these options is solely in the discretion

17  of the United States Attorney's Office.

18         Defendant agrees to waive any objections, motions, and/or defenses

19  Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

20  charges if a count of conviction is withdrawn, set aside, vacated, reversed, or

21  dismissed, including any claim that the United States has violated Double

22  Jeopardy.

23         Defendant agrees not to raise any objections based on the passage of time,

24  including but not limited to, alleged violations of any statutes of limitation or any

25  objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

26  Amendment.

27  //

28  //

PLEA AGREEMENT - 13

17.    <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____          12/19/2023
Patrick J. Cashman /for                        Date
Assistant United States Attorney

PLEA AGREEMENT - 14

1         I have read this Plea Agreement and I have carefully reviewed and discussed
2    every part of this Plea Agreement with my attorney.  I understand the terms of this
3    Plea Agreement.  I enter into this Plea Agreement knowingly, intelligently, and
4    voluntarily.  I have consulted with my attorney about my rights, I understand those
5    rights, and I am satisfied with the representation of my attorney in this case.  No
6    other promises or inducements have been made to me, other than those contained
7    in this Plea Agreement.  No one has threatened or forced me in any way to enter
8    into this Plea Agreement.  I agree to plead guilty because I am guilty.

9

10

11    _____          _____
12    Forrest Ethan Wanous                                         December 18 23
    Defendant                                                        Date

13

14         I have read the Plea Agreement and have discussed the contents of the
15    agreement with my client. The Plea Agreement accurately and completely sets
16    forth the entirety of the agreement between the parties.  I concur in my client's
17    decision to plead guilty as set forth in the Plea Agreement.  There is no legal
    reason why the Court should not accept Defendant's guilty plea.

18

19    _____          _____
20    Alex B. Hernandez, III                                        12-18-23
    Attorney for Defendant                                    Date

21

22

23

24

25

26

27

28

PLEA AGREEMENT - 15